## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LUCAS HINKEBEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:16-CV-01655-SNLJ |
| | ) | |
| GAVIN HOPLER, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

Plaintiff Lucas Hinkebein was shot twice in the back of the head at point-blank range by a Jefferson County Sheriff's deputy, Defendant Roberts, on November 9, 2015. At the time, Lucas was unarmed and surrounded by deputy Defendants Rice and Hopler. Defendant Hopler had Lucas pinned against the washing machine in his parent's small laundry room. Miraculously, Lucas survived, but he suffers from a traumatic brain injury and has no memory of the shooting. Defendants immediately attempted to justify the nearly-fatal use of force by concocting a story that Lucas reached for Defendant Rice's gun and fired it once through the deputy's holster. Despite that being Defendants' defense, Defendant Jefferson County conducted no ballistic or forensic testing on the physical evidence. Less than 30 days after the shooting, on December 8, 2015, the Sheriff's Office purposefully destroyed almost all the physical evidence related to the shooting so no one could ever test it. This destruction occurred 16 days **after** the Sheriff's Office received and acknowledged a letter from Plaintiff's counsel informing Defendants that litigation would soon commence. Plaintiff is entitled to sanctions for the intentional spoliation of the evidence.

Defendants maintain three shots were fired: one allegedly by Lucas and two admittedly by Defendant Roberts. Among the items collected at the scene and destroyed were <u>four</u> shell

casings, Defendant Rice's holster, bullet fragments, firearm magazines (including one with blood on it), handcuffs, original recordings of witness statements, original memory cards of scene photos, cotton swabs from the scene, and uniforms worn by Defendants.  Further, Defendants' records reflect that they collected Defendant Rice and Defendant Roberts' weapons at the scene and placed them in sealed evidence envelopes; Defendants have subsequently disclosed that those envelopes were found torn open and they do not know by whom, when or why this was done.  All of this physical evidence was Plaintiff's best opportunity to rebut Defendants' version of the shooting.  Once Defendants were informed that Plaintiff would pursue litigation, it was destroyed.

Plaintiff has been extremely prejudiced in that he cannot examine and test the weapons or other destroyed evidence to determine which Defendant fired his weapon, how many times each Defendant fired, whether a Defendant's weapon fired through a holster, or whether Plaintiff touched a Defendant's weapon or holster as Defendants claim.  The four destroyed shell casings alone contradict the Defendants' version of the event that three shots were fired, calling into question Defendants' justification for the shooting and leaving Plaintiff with no way to rebut the Defendants' narrative due to their willful destruction of the physical evidence.  Plaintiff is entitled to dispositive sanctions for Defendants' intentional destruction of physical evidence less than a month after a nearly-fatal shooting by their own deputies, particularly when they knew immediately after the shooting that Plaintiff would pursue litigation.

I.    Facts

A.  Shooting and Investigation

On November 9, 2015, Lucas Hinkebein was shot by Defendant Roberts, a Jefferson County Sheriff's deputy.  *Deposition of Defendant Rice at 7:10-13, relevant portions of which*

are attached hereto as Exhibit 1.  Defendant Roberts did not know if Lucas was armed when he shot Lucas.  *Deposition of Defendant Roberts at 9:23-24, relevant portions of which are attached hereto as Exhibit 2.*  Defendant Roberts fired the two shots at the back of Lucas's head while Defendant Hopler "had Lucas pinned face and body first against that washer/dryer[.]"  *Roberts Deposition at 8:23-10:14; Rice Deposition at 8:11-17.*  Lucas's parents, Mark and Christine Hinkebein, ran to the scene immediately before Defendant Roberts fired the two shots at the back of their son's head and witnessed the two shots.  *Deposition of Mark Hinkebein at 68:19-69:3, relevant portions of which are attached hereto as Exhibit 3; Deposition of Christine Hinkebein at 65:20-66:1, relevant portions of which are attached hereto as Exhibit 4.*  Lucas was still and not struggling when Defendant Roberts fired the two shots.  *Id.*  Lucas survived, and Christine Hinkebein testified that Lucas has no recollection of the shooting.  *Christine Hinkebein Deposition at 87:17-19.*

The investigative report produced by Defendants reflects that evidence technicians collected dozens of pieces of evidence at the scene of the shooting.  *Exhibit 5.*  This included four shell casings from .40 caliber bullets, which are the type fired by weapons the Sheriff's Office deputies carry.  *Id.* at JCSD000177.  There were several bullet projectile fragments collected, as well as weapon magazines, clothing, swabs from clothing, and other objects.  *Id.* The report reflects that the objects were collected in evidence bags at the scene and stored at the Sheriff's Office's evidence locker.  *Id.*

Defendants allege that, prior to Defendant Roberts shooting Lucas, Lucas reached for Defendant Rice's weapon and the weapon fired through the bottom of the deputy's holster. *Exhibit 6 (Sheriff's Office Press Release); Rice Deposition at 140:23-141:16; Deposition of Sergeant James Kausler at 56:20-25, relevant portions of which are attached hereto as Exhibit*

*7.* Defendant Rice testified that he had complete control of his weapon and he was not in contact with Lucas before Defendant Roberts shot Lucas. *Rice Deposition at 7:19-21, 8:1-23.* The Sheriff's Office conducted no gunshot residue analysis on Lucas, Defendant Rice, or Defendant Rice's holster and belt. *Kausler Deposition at 52:20-53:3.*

James Kausler, one of Defendants' own sergeants, served as the lead investigator at the shooting scene and concluded that three shots were fired in the incident with Lucas Hinkebein. *Kausler Deposition at 12:9-12, 36:17-24.* As stated, however, four shell casings were found at the scene, along with numerous projectile fragments. *Exhibit 5 at JCSD000177-178.* Kausler testified that no ballistics testing or other forensic testing of the evidence was conducted, which was within his discretion to order. *Kausler Deposition at 42:25-43:13, 54:4-21.* Kausler did not order such testing because the deputies' statements about the shooting were "consistent." *Kausler Deposition at 42:25-43:13.* When asked why four shell casings were collected at the shooting scene where three shots were allegedly fired, he did not know. *Kausler Deposition at 39:9-17.* Kausler admitted that ballistics testing on the weapons and shell casings would have revealed which weapon fired each shot. *Kausler Deposition at 39:18-40:3.*

Along with not performing gunshot residue or ballistics analyses, Defendant Jefferson County performed no other forensic testing on any of the evidence seized at the scene. It performed no DNA or fingerprint testing on Defendant Rice's weapon or holster. *Kausler Deposition at 48:12-18.* No DNA or fingerprint testing was conducted on any piece of evidence. *Kausler Deposition at 48:19-22.*

On November 19, 2015, ten days after the shooting, Jefferson County Prosecuting Attorney Forrest Wegge wrote to the Jefferson County Sheriff, Defendant Boyer. *Exhibit 8.* He wrote that he found the actions by the deputies justified, without providing reasons. *Exhibit 8.*

4

He also wrote that he received a warrant application for Lucas that he would keep under review. *Exhibit 8*.

### B. Plaintiff's Claim Letter and Acknowledgement

Ten days after the shooting, on November 19, 2015, undersigned counsel sent a letter to Defendant Jefferson County Sheriff's Office stating that the firm represents the Hinkebeins with respect to the claim arising from the shooting. *Exhibit 9*. Four days later, on November 23, 2015, the Sheriff's Office received the claim letter. *Exhibit 9* (return receipt). The same day, John Rayfield, counsel for the Sheriff's Office, called undersigned counsel and stated that he represented the Sheriff's Office and had received the claim letter. *Exhibit 10* (December 15, 2015, letter from Jason Turk to John Rayfield confirming earlier conversation). On December 1, 2015, Defendants' insurer, MOPERM, wrote to undersigned counsel, stating that it had received the claim letter and would investigate the shooting. *Exhibit 11*.

### C. Evidence Destruction

Twenty-nine days after the shooting, and more than two weeks after acknowledging Plaintiff's claim, on December 8, 2015, the Sheriff's Office destroyed nearly all evidence of the shooting. The destroyed evidence includes:

- All ammunition casings and projectiles
- Two weapon magazines, one with blood on it
- Defendant Rice's duty holster, belt, magazine case, handcuff case, handcuffs, baton and holder
- Cotton swabs of Defendant Rice's shirt
- Original CD recordings of interviews and dispatch
- Memory cards of digital photos
- Original DVD of incident scene diagram
- Lucas's clothing
- Shot glass from Lucas's pocket
- Hinkebeins' bread knife and sheath
- Handcuffs and handcuff case
- Uniform pants, shirt, and boots

5

*Exhibit 12.* Other evidence was returned to use by the deputies:

- Pepper spray canister
- Defendant Rice's vest carrier, body armor, and name plate

*Exhibit 12.*

The Sheriff's Office's records indicate that it has retained some physical evidence: Defendant Rice's and Defendant Roberts' weapons, an audio CD with one witness interview recording, alcohol blood test reports (testing the deputies for alcohol consumption), and Lucas's clothing. *Exhibit 12.*

On October 19, 2017, Kausler testified as a corporate designee for Jefferson County. *Kausler Deposition at 6:10-15.* Kausler was designated to testify, among other subjects, about the preservation of evidence. *Kausler Deposition at 6:16-7:14; Notice of Deposition of Corporate Designee of Jefferson County, attached hereto as Exhibit 13.* Kausler testified that he did not know where the physical evidence from the scene of the shooting was currently located. *Kausler Deposition at 76:6-80:6.* He believed the evidence was destroyed, but was unsure. *Kausler Deposition at 76:6-80:6.* Defense counsel stated that much of the evidence had been destroyed. *Kausler Deposition at 76:13-24.*

On October 25, 2017, undersigned counsel sent a letter to defense counsel seeking supplemental discovery responses concerning the evidence destruction. *Exhibit 14.* On October 31, 2017, Defendants produced the Sheriff's Office Chain of Custody Report and Property Report reflecting the destruction of evidence. *Exhibit 12.*[1] On November 7, 2017, Defendants produced eight Sheriff's Office policies that they contend relate to preservation of evidence.

---

[1] On February 22, 2017, prior to document production pursuant to FRCP 26(a)(1) or in response to discovery requests, defense counsel Hellmich informed undersigned counsel Turk and Farrell that "the evidence at the scene was destroyed within a couple of months of the incident, after the prosecutor determined that the shooting was justified and that no action was warranted with respect to the deputy involved. It is my understanding that this is normal procedure. As mentioned in my previous email, there are 699 photos of the scene and evidence." This Motion's Exhibit 12 was not produced until after Plaintiff's counsel's October 25, 2017, letter.

*Exhibit 15* (policies not attached). No Sheriff's Office policy addresses preservation of evidence when a litigation claim is made. No Sheriff's Office policy addresses preservation of evidence following an officer-involved shooting. On November 8, 2017, defense counsel informed undersigned counsel that no litigation hold instruction was given to Defendant Jefferson County Sheriff's Office in this matter. *Exhibit 16.*

On November 17, 2017, defense counsel informed undersigned counsel by phone and in writing that the two weapons allegedly fired during the incident, Defendant Rice's and Defendant Roberts', were placed into evidence envelopes and sealed after the shooting. *Exhibit 17.* Upon inspection on November 16, 2017, defense counsel and Sheriff's Office representatives found that the evidence envelopes were unsealed and opened. *Exhibit 17.* Defense counsel stated: "There is no record of who opened the Envelopes or when it occurred, nor do my clients have any knowledge of that." *Exhibit 17.* An attachment from Defendant Rice's weapon had been detached from his weapon in the envelope and returned to him. *Exhibit 17.*

## II.     Argument

Defendants had a legal duty to preserve the evidence when they became aware litigation was imminent. *Process Controls Intern., Inc. v. Emerson Process Mgmt.*, 2011 WL 5006220, at *6 (E.D.Mo. Oct. 20, 2011). They did not do so. Defendants also had a legal duty to issue a litigation hold when put on notice of a claim. *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). They did not do so. In order for sanctions for spoliation to be warranted, a district court is required to make two findings: (1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party. *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015)

(citing *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013)).  The first element is satisfied by a finding that the destruction was in bad faith.  *Hallmark Cards, Inc.*, 703 F.3d at 460.  Under these circumstances, bad faith in the destruction is presumed to exist.  Plaintiff is also severely prejudiced by the destruction.  The Court and jury are unable to administer justice without the evidence that was destroyed.  A dispositive sanction is appropriate.

### A. Defendants had an obligation to preserve evidence after being notified that litigation was imminent, even before the suit was filed.

A party's obligation to preserve evidence begins "when a party *knows or should have known* that the evidence is relevant to future or current litigation."  *Process Controls Intern., Inc.*, 2011 WL 5006220, at *6 (quoting *E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005)) (emphasis added).  "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *see also Moyers By and Through Moyers v. Ford Motor Co.*, 941 F.Supp. 883 (E.D. Mo. 1996); *Wagoner v. Black & Decker (U.S.) Inc.*, 2006 WL 2289983 (D. Minn. 2006); *Bass v. General Motors Corp.*, 150 F.3d 842 (8th Cir. 1998) (bad faith found where vehicle was destroyed after inspection by one party in preparation for litigation); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 280-81 (8th Cir. 1995) (sanctions imposed for pre-trial failure to preserve vehicle tires); *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (stating that obligation to preserve evidence arises when party "should have known that the evidence may be relevant to future litigation").

Here, there is no question that Defendants had actual knowledge that litigation was likely to follow the shooting.  Defendants were actually aware of it no more than two weeks after the

shooting, when the Sheriff's Office received undersigned counsel's claim letter and when counsel for the Sheriff's Office contacted undersigned counsel acknowledging receipt of the letter. Defendants' insurer followed up one week later with written acknowledgement of the claim. Further, there is no question that the destroyed evidence is relevant to the litigation. This is the physical evidence of a police shooting. There is little more relevant than that evidence.

The Court in *Zubulake*, 220 F.R.D. 212, made a series of rulings that outline the scope of a party's responsibility to preserve evidence when litigation is reasonably anticipated. The Court was analyzing whether backup tapes of electronic documents and emails must be preserved when litigation is anticipated. *Id.* at 217-18. It found that "[o]nce a party reasonably anticipates litigation, it must suspend its usual document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Id.* at 218.

The holding in *Zubulake* is instructive when applied to Defendants' actions. The Sheriff's Office was put on notice, in writing, by an attorney for a shooting victim, immediately after the shooting, that a claim would be made. Neither the Sheriff's Office, nor its counsel, nor its insurer instituted a litigation hold, as was required by law. Instead, the Sheriff's Office destroyed the evidence weeks later. Further, the evidence destroyed was indisputably material to the case. Defendants did not destroy obscure data on a tape in deep storage, but the actual, physical evidence of the shooting itself. There is no excuse for the destruction.

**B. Bad faith is presumed when the party knows that litigation is likely to arise.**

There is no need to show bad faith if the evidence is destroyed after the party becomes aware of imminent litigation. "If . . . the destruction of evidence occurs after litigation is imminent or has begun, no bad faith need be shown by the moving party." *E\*Trade Securities LLC*, 230 F.R.D. at 589 (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 747-48 (8th Cir.

2004)).  "When litigation is imminent or has already commenced, 'a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy.'"  *Id.*  Plaintiff therefore does not need to show bad faith, and Defendants cannot rely on any written or unwritten evidence destruction policy.

Here, Defendants' awareness of imminent litigation and subsequent intentional destruction of evidence is clear:

| | |
|---|---|
| November 9, 2015: | Lucas Hinkebein is shot. |
| November 19, 2015: | Plaintiff's counsel sends the Jefferson County Sheriff's Office the claim letter. |
| November 23, 2015: | The Sheriff's Office receives the claim letter.  Plaintiff's counsel speaks by phone with John Rayfield (attorney for Jefferson County Sheriff's Office), who acknowledges the claim. |
| December 1, 2015: | Jefferson County Sheriff's Office's insurer, MOPERM, acknowledges Plaintiff's claim in writing. |
| December 8, 2015: | The physical evidence is destroyed. |

While bad faith need not be shown in this instance, it is self-evident from this timeline. Plaintiff informed Defendants immediately after the shooting that he would pursue a claim. Defendants responded, acknowledging the claim verbally and in writing.  Defendants destroyed the evidence days later.  Jefferson County's corporate designee for preservation of evidence had no explanation for the destruction.  Further, the Prosecuting Attorney summarily found the shooting justified only ten days after it occurred.

The Eighth Circuit has also found that bad faith need not be shown where, prior to litigation commencing, a party selectively destroys some evidence and not other evidence.  *See E\*Trade Securities LLC*, 230 F.R.D. at 588 (citing *Stevenson*, 354 F.3d at 747-48*)*.  Here, the Sheriff's Office picked and chose items for destruction from its evidence locker.  The items it chose to destroy included shell casings and bullet fragments that could have been tested to determine who fired shots in the Hinkebeins' laundry room that evening.  The Sheriff's Office

also destroyed weapon magazines, including one covered in blood.  Defendant Rice's holster was destroyed after the Sheriff's Office claimed that Lucas Hinkebein grabbed Defendant Rice's weapon and fired it through the holster.  The holster was destroyed without testing it for DNA, fingerprints, or gunshot residue to confirm if that story was accurate.  The items preserved have little to no relevance to the critical issues in the litigation, including a mace canister and Defendant Rice's bulletproof vest.  In short, the most material physical evidence was destroyed and despoiled, while the largely useless items were kept.

Defendants cannot rely on any formal or informal evidence preservation policy to justify the destruction.  As stated *supra*, Defendants were required to disregard their usual evidence preservation and destruction policies, issue a litigation hold to the entire Sheriff's Office, and ensure that the evidence was properly preserved.  *Zubulake*, 220 F.R.D. at 218; *E*Trade Securities LLC*, 230 F.R.D. at 589.  Defendants did not take any of these necessary steps.  Their internal evidence preservation and destruction policies have no bearing here, where they are required to abandon those policies in favor of complete preservation.

Defendants intentionally destroyed evidence of the shooting.  They did so after being notified in writing that litigation was imminent.  They did so without issuing a litigation hold. The destruction was in bad faith and the first element of spoliation is met.

### C.  Plaintiff has been prejudiced by the destruction of evidence.

"The requisite element of prejudice is satisfied by the nature of the evidence destroyed. To find prejudice, the despoiled evidence must have been both relevant and must not be available to the moving party through other sources."  *American Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, 2012 WL 2992627, *3 (E.D.Mo. July 20, 2012) (citing *Stevenson*, 354 F.3d at 748, and *Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 780 (8th Cir. 2004)).

11

The destroyed and despoiled evidence was unquestionably relevant and there is no other source for the evidence.  The evidence was central to both Plaintiff's claims and Defendants' defenses.  Defendants assert that Defendant Rice's weapon fired once and that Defendant Roberts fired twice.  Four shell casings were found.  They were not tested, and they were destroyed.  Kausler testified that ballistics testing could have shown which weapon fired each of the four rounds, but that testing was not done.  The four shell casings would have told a different story than what is presented by the deputies.  Did Defendant Hopler fire his weapon?  If so, why?  Did Defendant Roberts fire four times at Lucas?  Did Defendant Rice fire at all?  If so, to what was Defendant Roberts responding when he fired, if anything?  The shell casings were the best evidence of who fired his weapon in the laundry room, and how many times, but that evidence was intentionally destroyed after Defendants received notice of this claim.  If the casings showed that Defendant Roberts was not, in fact, reacting to a shot, then Defendants' justification for lethal force is nonexistent.  There is now no way to determine whether the deputies' stories are consistent with the physical evidence.  That evidence did exist, and Defendants intentionally destroyed it, leaving Plaintiff, the Court and the jury unable to confirm or contradict their defense to shooting Lucas twice in the head.

Defendants claim that Lucas reached for Defendant Rice's weapon and fired it through the holster, which justified Defendant Roberts using lethal force.  Defendants conducted no testing for gunshot residue, fingerprints or DNA on the holster, then destroyed it after being notified of a claim.  Defendants did not test the bullet fragments for DNA, then destroyed them.  Defendants conducted no testing on the weapons, and allowed those to be exposed to tampering in the last two years.  The evidence is now contaminated and any testing on it would be useless.  Again, this was the best, and only, physical evidence that Lucas reached for Defendant Rice's

weapon and fired it through his holster, which is the linchpin of Defendants' case. Plaintiff has been denied the primary scientific methods by which to contradict this testimony: was there gunshot residue on the inside of Defendant Rice's holster? Were Lucas's fingerprints or DNA on the holster or Defendant Rice's weapon? Was Lucas's DNA on any of the bullet fragments? The intentional destruction of this evidence precludes the necessary fact-finding.

Further, no testing was conducted on weapon magazines recovered, including one covered in blood. The Hinkebeins' property was also summarily destroyed. Original discs and drives of photos and interviews were destroyed. These include interviews of the Defendant Deputies and witnesses. Plaintiff is left to trust that the versions provided to Plaintiff in discovery are complete without any way to confirm that. Plaintiff is severely prejudiced as a result of the destruction.

### D.  A dispositive sanction is the appropriate remedy.

"In choosing between the available sanctions, the Court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *American Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, 2012 WL 2992627, *5 (E.D.Mo. July 20, 2012) (citing *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir.1999)). "A sanction should be sufficient to remedy the prejudice caused to the moving party, *i.e.*, to restore the lack of integrity in the case being presented to the jury." *Id*. The sanction should also serve "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id*.

A dispositive sanction is appropriate where law enforcement destroys material evidence prior to litigation in a section 1983 excessive force action. Default judgment or dismissal is justified where there is "willfulness, fault, or bad faith." *Peschel v. City of Missoula*, 664 F.

Supp. 2d 1137, 1142 (D.Mt. 2009). "But even when the spoliation is less culpable, dismissal

may be necessary if the prejudice to the nonspoiling party is extraordinary, denying it the ability

to adequately defend or prosecute its case." *Id.* (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d

583, 593 (4th Cir. 2001)). In *Peschel*, the plaintiff sued for excessive force used in his arrest. *Id.*

at 1140. The defendant police agency video recorded the attempt to take custody of the plaintiff,

but the video was later "lost," along with numerous other unrelated videos of police encounters.

*Id.* at 1141. The police argued that sanctions were not warranted because multiple eyewitnesses

could testify about what happened. *Id.* at 1144. The Court found that the non-party witnesses

stated the force seemed excessive, but the officers stated that the force was reasonable. *Id.* at

1144-45. The video's "inherent value" was to see the actual event itself, and not to rely on

contradictory witness testimony. *Id.* at 1145. The Court found that the police proposition to rely

on witness testimony and only prevent the officers from testifying about what they saw on the

video was "illusory" and "mischief" because of:

> the fact that there would effectively be no sanction whatsoever for the City's
> spoliation of the best evidence of what occurred during the arrest of [plaintiff].
> The purported sanction would have absolutely no punitive, deterrent, or remedial
> value. It is cavalier to suggest otherwise. At worst, the Court would be
> effectively condoning the spoliation of the best evidence available to resolve the
> factual dispute with the greatest accuracy.

*Id.*

The *Peschel* Court weighed six factors in determining whether a dispositive sanction was

appropriate. *Id.* at 1145-48. As discussed below, the facts surrounding Defendants' destruction

of evidence meet or exceed the facts supporting the factors in *Peschel*.

1. **The existence of extraordinary circumstances.** The *Peschel* Court found that

defendant's spoliation "severely disrupted the orderly administration of justice in this case, and

14

destroyed the evidentiary balance essential to the accuracy of the fact-finding process," warranting a "strict sanction." *Id.* at 1146.

> Most importantly, the spoliation irreparably jeopardized the accuracy of the fact-finding process to the prejudice of [plaintiff].
> The circumstances presented mandate the sanction in order that the fair and orderly administration of justice is restored to these proceedings. Any lesser sanction would be ineffective and result in a trial divorced from the merits and focused upon the spoliation itself.

*Id.* Likewise, here, Defendants' spoliation has jeopardized the accuracy of fact-finding. In *Peschel*, the Court rejected the defendants' argument that non-party witness testimony was sufficient. *Id.* at 1145. The subject evidence was also merely "lost," apparently as a result of a computer glitch. *Id.* at 1141. Here, there are no witnesses except the deputies to the alleged act that Defendants argue justifies the use of deadly force: that Lucas reached for Defendant Rice's weapon, removing it from the holster enough to fire it through the bottom of the holster. Defendants intentionally destroyed the best evidence of whether that act occurred. Defendants destroyed the shell casings and the holster, and despoiled the weapon, all without conducting any forensic testing. Extraordinary circumstances exist and exceed those in *Peschel*.

2. **Willfulness, bad faith or fault**. The *Peschel* Court found that the department was "[u]ndoubtedly . . . at fault for the spoliation." *Id.* The Court dismissed the defendants' argument that the loss occurred accidentally due to computer glitches. *Id.* "Whatever afflictions the system may have had, the record establishes the City, through its Police Department, utterly failed to have any controls in place to ensure the [evidence was] adequately preserved." *Id.* The Court found that the evidence was not destroyed willfully or in bad faith, but that it was despoiled recklessly. *Id.* Here, the evidence was destroyed willfully. Further, as explained *supra*, bad faith is presumed because Defendants were on notice of litigation. This factor is met.

15

3. **Nexus between sanctions, misconduct and matters in controversy**.  The *Peschel* Court found that the defendant could not seriously dispute the relevance of the evidence to the central matter: whether its officers used reasonable force.  *Id.* at 1147.  The matter is precisely the same here.  Defendants allege that the use of deadly force is justified because Lucas reached for, and fired, Defendant Rice's weapon.  Defendants then destroyed and despoiled all physical evidence that could have confirmed or contradicted the defense.  The destroyed and despoiled evidence is central to the case.

4. **Risk of prejudice to plaintiff**.  The record in *Peschel* showed that the non-party witnesses stated that the force used may have been excessive.  *Id.*  In the absence of the lost evidence, the plaintiff was "left with the difficult, if not impossible, task of rebutting the various officers' testimony that the force used was entirely reasonable under the circumstances." *Id.* Here, the risk of prejudice is more severe.  In *Peschel*, the Court did not find that the plaintiff could not testify about the situation, and there were non-party witnesses to the arrest.  Here, the only witnesses to the act that Defendants argue justifies the shooting are the Defendant Deputies and Plaintiff.  Plaintiff has no memory of the event after being shot twice in the head.  There are no non-party witnesses to the alleged reaching for, and firing of, Defendant Rice's weapon. Without the physical evidence, Plaintiff "is left with the difficult, if not impossible, task of rebutting the various officers' testimony that the force used was entirely reasonable under the circumstances."  The prejudice to Plaintiff is severe.

5. **Public policy favoring disposition of cases on their merits.**  The *Peschel* Court found that "the public has a keen interest in the fair and accurate resolution of disputes emanating from encounters between law enforcement and the public."  *Id.*  The spoliation hindered "the most accurate determination of this case upon its merits[.]"  *Id.*  The same is true

16

here.  Law enforcement agencies are in the business of collecting and preserving evidence, and should be held to the highest possible standard for doing so.  This is particularly true when investigating their own for use of excessive force.  The standard is even higher here, however, where the force used was deadly force.  Destruction of the evidence of a police shooting less than a month after the shooting, weeks after being notified that litigation would ensue, and with obvious inconsistencies between the deputies' statements and the physical evidence, is beyond the pale for a public institution that should be committed to the pursuit of truth.  Defendants have made it impossible for the Court and the jury to dispose of this case on its merits.  Public policy may traditionally favor disposition of a case on its merits, but that cannot apply when a police force destroys the most important evidence of a shooting by one of its own.

6.  **Consideration of a lesser sanction.**  The *Peschel* Court found that an adverse inference instruction "would not sufficiently punish the City for its spoliation nor serve as a sufficient disincentive to destroy evidence.  Absent a stricter sanction, the City would proceed to trial pitting the evidence of its officers against the [plaintiff] and other witnesses – unphased by its spoliation[.]"  *Id.* at 1147-48.  Further, an adverse inference instruction "is only effective if coupled with the admission of evidence surrounding the spoliation itself."  *Id.* at 1148 (citing *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002)).  Allowing admission of evidence regarding the spoliation would have been problematic, turning the jury's attention to the spoliation, rather than the use of force, which "would not enhance, but actually degrade, the truth-finding process."  *Id.*  Likewise, here, an adverse inference instruction is insufficient.  The officers' testimony would not even be pitted against other eyewitnesses, as there are none.  The officers can present a version of the facts unopposed by the physical evidence.  Further, an adverse inference instruction coupled with admission of evidence

regarding the spoliation would turn this use of force case into a destruction of evidence case. A lesser sanction is not warranted.

Ultimately, the *Peschel* Court entered an Order that "the arresting officers used unreasonable force to effect the arrest of [the plaintiff]." *Id.* at 1145. The Court left for jury determination the issues of causation, injury, damages, and punitive damages. *Id.*

The most appropriate sanction here is also a dispositive sanction. Defendants' behavior here is patently in worse faith than the defendants' behavior in *Peschel*. Here, Defendants did not merely allow a computer file to be "lost" because of a computer malfunction. This is the actual, physical evidence of a police shooting that Jefferson County intentionally destroyed within a month of the shooting and after being notified of a claim. Further, in *Peschel*, the Court did not state that the plaintiff had sent a written notice of his claim, but found that the duty to preserve evidence existed because "the prospect of . . . civil litigation was reasonably foreseeable." *Id.* at 1141. Here, Defendant Jefferson County received, and acknowledged, a claim related to the shooting. Still, the County destroyed evidence, including evidence that contradicted the stories put forth by all Defendants. The weapons were left open to tampering and made useless as an evidentiary basis. The prejudice is also more severe: there are no other witnesses to the act that Defendants argue justify the shooting. Only the physical evidence would confirm or deny those stories, and Defendants destroyed that evidence after receiving notice of Plaintiff's claim. A dispositive sanction is appropriate.

Other courts have found that a dispositive sanction is an appropriate remedy where the most material evidence is destroyed. *See, e.g.*, *St. Louis Produce Mkt. v. Hughes*, 2012 WL 4378194 (E.D.Mo. Sept. 25, 2012) (striking pleadings and entering summary judgment where, despite knowledge of claim made, the defendant deleted relevant emails); *Ashton v. Knight*

*Transp., Inc.*, 772 F. Supp. 2d 772 (N.D. Tex. 2011) (striking defendant's pleadings and defenses to liability where, in aftermath of fatal truck accident, defendant performed destructive testing on the vehicle, among other destruction); *Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006) (affirming dismissal where plaintiff erased hard drive in same month action was filed against him); *State Farm Fire and Cas. Co. v. Broan Mfg. Co., Inc.*, 523 F. Supp. 2d 992 (D.Az. 2007) (dismissing subrogation action where insurer waited two months to notify manufacturer of claim, and damaged scene was already being repaired by then); *Silvestri*, 271 F.3d 583 (dismissal of products liability action where party anticipated litigation but took no action to preserve vehicle); *Moyers By and Through Moyers v. Ford Motor Co*., 941 F.Supp. 883 (E.D. Mo. 1996) (summary judgment entered for defendant where plaintiff's attorney did not preserve seat belt in product liability case); *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166 (D.Co. 1990) (default judgment entered for destruction of source code after defendant was notified that code was relevant to litigation); *see also Hawkes v. City of Albuqerque*, D-202-CV-2016-01373, Order on Plaintiffs' Motion for Sanctions, (State of New Mexico, County of Bernalillo, Second Judicial Circuit, Oct. 5, 2017) (granting sanction instructing jury that police shooting was unreasonable as a matter of law where police failed to preserve taser camera video), *a copy of which is attached hereto as Exhibit 18.*

In the alternative, an adverse inference instruction and award of attorneys' fees is appropriate if the Court does not issue a dispositive sanction.  The Court has discretion in how to craft an adverse inference instruction.  Plaintiff requests that any such instruction include a finding that Defendants had a duty to preserve the destroyed evidence, that Defendants received and acknowledged notice that Plaintiff would file a lawsuit, that Defendants thereafter destroyed

evidence intentionally and in bad faith, and that the jury may assume that such evidence would have been unfavorable to Defendants.

### III. Conclusion

Defendants destroyed the physical evidence of a shooting of an unarmed man by Jefferson County Sheriff's deputies less than a month after the shooting and weeks after being notified that litigation would commence. The most severe sanction is appropriate here in order to deter Jefferson County and other law enforcement agencies from destroying evidence in order to thwart later litigation. Plaintiff respectfully requests that this Court grant his Motion for Sanctions for Spoliation of Evidence, enter a dispositive sanction against Defendants, or, in the alternative, sanction Defendants in the manner it deems appropriate, and grant any further relief the Court deems necessary and appropriate.

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, L.C.**

By: /s/ Jason K. Turk
Robert D. Blitz, #24387MO
Kelley F. Farrell, #43027MO
Jason K. Turk, #58606MO
Amy E. Oslica, #66879MO
120 S. Central Avenue, Ste. 1500
St. Louis, MO 63105
Telephone: 314.863.1500
Facsimile: 314-863-1877
rblitz@bbdlc.com
kfarrell@bbdlc.com
jturk@bbdlc.com
aoslica@bbdlc.com

*Attorneys for Plaintiff Lucas Hinkebein*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to all counsel of record via the Court's electronic notification system on this 8th day of December, 2017.

/s/ Jason K. Turk