Case: 4:16-cv-01655-SNLJ   Doc. #:  29-7   Filed: 12/08/17   Page: 1 of 19 PageID #: 332

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF MISSOURI
                     EASTERN DIVISION

LUCAS HINKEBEIN,        )
                        )
        Plaintiff,      )
                        )
vs.                     ) No. 4:16-CV-01655-SNLJ
                        )
GAVIN HOPLER, et al,    )
                        )
        Defendants.     )
```

Deposition of JEFFERSON COUNTY,
by SERGEANT JAMES KAUSLER as Corporate Designee,
taken on behalf of the Plaintiff
October 19, 2017

INDEX

| Questions By: | Page: |
|---|---|
| MR. TURK | 5 |

Reporter:  Sara Alice Masuga, CSR, CCR
IL CSR No. 084-002993   MO CCR No. 1012

MASUGA COURT REPORTING
2033 HIAWATHA AVENUE
ST. LOUIS, MO  63143-1215



Case: 4:16-cv-01655-SNLJ   Doc. #: 29-7   Filed: 12/08/17   Page: 2 of 19 PageID #: 338

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

```
 1        Q.    And it's important that you answer verbally
 2   and not with "uh-huh' or "huh-uh" so that she can get an
 3   accurate record; do you understand that?
 4        A.    Yes, sir.
 5        Q.    And I'm going to assume that you understand
 6   the question I'm asking or the statement I'm making
 7   unless you ask me for clarification; do you understand
 8   that?
 9        A.    Yes, sir.
10        Q.    Okay.  You are appearing here today as a
11   corporate designee of Jefferson County; correct?
12        A.    That's correct.
13        Q.    And do you understand that your testimony
14   today is the testimony of Jefferson County?
15        A.    I do.
16        Q.    With respect to the topics on which you are
17   designated -- And I'm handing you Exhibit 47, which is
18   the Amended Notice of Deposition.  Do you recognize that?
19             MR. HELLMICH:  You may not.
20        A.    Yeah --
21             MR. HELLMICH:  I don't know that --
22        A.    -- I have not seen it.
23             MR. HELLMICH:  I don't know that I showed it
24      to you.
25        A.    I have not seen it.
```

Case: 4:16-cv-01655-SNLJ   Doc. #:  29-9   Filed: 12/08/17   Page: 3 of 19 PageID #: 350

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

```
 1         Q.    Well, if you can look at Exhibit A to that,
 2   that's --
 3               MR. HELLMICH:  Next page.
 4               THE WITNESS:  Next page?
 5         Q.    -- the third page --
 6               MR. HELLMICH:  Two pages.
 7         Q.    -- Pages 3 and 4 there, the Topics of
 8   Examination, it's my understanding that you are going to
 9   testify today about topics Number 6 and 7.  If you could
10   review those.
11         A.    Okay.
12         Q.    You're prepared to testify about those topics
13   today; is that correct?
14         A.    Yes, sir.
15         Q.    And then to the extent possible, can you tell
16   me if you're not the most knowledgeable person, you may
17   have information about Jefferson County's communications
18   related to the incident in the Complaint?
19         A.    What are you referring to communications
20   related to?
21         Q.    Just, you know, did one officer speak to
22   another about the incident or was there a memo written
23   from one officer to another about the incident.
24         A.    You mean -- Just to clarify, I'm not sure I
25   understand.  Do you -- Do you mean as far as the
```

Case: 4:16-cv-01655-SNLJ   Doc. #: 29-7   Filed: 12/08/17   Page: 4 of 19 PageID #: 306

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

1   they're being -- each officer is getting assigned cases,
2   making sure they're following up.
3       Q.   What is -- What is the Bureau?
4       A.   The Detective Bureau with the Jefferson County
5   Sheriff's Office.
6       Q.   And is one of your responsibilities there to
7   oversee certain investigations?
8       A.   Yes, sir.
9       Q.   Okay.  And you're responsible for overseeing
10  the investigation into the attempt to take custody of and
11  a shooting of Lucas Hinkebein; correct?
12      A.   Yes, sir.
13      Q.   How long were you detective sergeant?
14      A.   March of 2013 to January of this year.
15      Q.   What's your position now?
16      A.   Road sergeant.  Road patrol sergeant, Platoon
17  2.
18      Q.   Have you told me all of your responsibilities
19  as a detective sergeant?
20      A.   To the best of my knowledge.
21      Q.   In your time as a detective sergeant, how many
22  police-involved shootings were you responsible to
23  investigate?
24      A.   Two.
25      Q.   And that's Lucas Hinkebein is one; correct?

Case: 4:16-cv-01655-SNLJ   Doc. #:  29-7   Filed: 12/08/17   Page: 5 of 19 PageID #: 306

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

1    Q.   And part of that includes he creates -- Strike
2    that.  Part of that includes he takes photos of the
3    scene?
4    A.   Correct.
5    Q.   And he creates a diagram of the scene?
6    A.   Correct.
7    Q.   And that diagram of the scene includes showing
8    where pieces of evidence are in the room or at the scene
9    of the incident?
10   A.   Correct.
11   Q.   And Page 160 is an example of a diagram that
12   he created that maps out where various pieces of evidence
13   were found by the investigative team; correct?
14   A.   By Detective Schuenemann; correct.
15   Q.   By him?
16   A.   (Nodding.)
17   Q.   Okay.  Do you know how many shots were fired
18   in the incident?
19   A.   I was -- I was under the impression three were
20   fired.
21   Q.   And each shot was filed -- fired by a Glock 22
22   .40 caliber pistol; is that correct?
23   A.   Based upon what was found at the scene, it was
24   deemed to be that, yes.
25   Q.   Okay.  And to briefly describe the -- the

Case: 4:16-cv-01655-SNLJ   Doc. #: 29-7   Filed: 12/08/17   Page: 6 of 19 PageID #: 302

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

1       A.   If you match it to the diagram, that's --
2  that's correct, yes.
3       Q.   Okay.
4       A.   Showing that looks like a water heater, a side
5  of a water heater in the photo.
6       Q.   These are also photos that Detective
7  Schuenemann took; correct?
8       A.   Correct.
9       Q.   Do you know has Jefferson County concluded why
10 there are four spent casings at the scene of a shooting
11 where three shots were fired?
12      A.   No, sir.
13      Q.   Was there any other evidence collected at the
14 scene or through speaking with any witnesses that sheds
15 light on why there were four spent casings at the scene
16 when three shots were fired?
17      A.   No.
18      Q.   Can ballistics testing be used to determine
19 from which weapon each cartridge casing was spent?
20      A.   It's my understanding that each -- each primer
21 from each weapon has a distinct -- I don't know what you
22 want to call it.  I don't want to call it a fingerprint.
23 They have a name for it and it escapes me the name right
24 now.  So, each cartridge can -- each cartridge, the
25 primer can be matched to the firing pin.

Case: 4:16-cv-01655-SNLJ   Doc. #: 29-7   Filed: 12/08/17   Page: 7 of 19 PageID #: 308

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

1      Q.   Okay.  So, you can match cartridge casings to
2  a particular weapon?
3      A.   To a fire -- Yes.
4      Q.   In this Page 160, Tab 22, the Incident Scene
5  Diagram, there are also, as reflected in the Legend,
6  multiple what are described as projectile fragments or
7  core fragments; correct?
8      A.   You said projectiles or fragments; correct?
9      Q.   Yes.
10     A.   Yes.  That is right, correct.
11          (At this point, Plaintiff's Group Exhibit
12           No. 57 was marked for identification.)
13     Q.   I'm handing you Exhibit 57.  If you can look
14  at that for a moment.
15     A.   Okay.
16     Q.   Do you recognize the photos in 57?
17     A.   I do.
18     Q.   And the Legend on the Incident Scene Diagram
19  showed that there were pieces of evidence marked E2
20  through E21; correct?
21     A.   Yes, sir.
22     Q.   And do the photos reflect each of the pieces
23  of evidence 2 through 21 photographed in the locations
24  where they were found?
25     A.   As according to Detective Schuenemann's

Case: 4:16-cv-01655-SNLJ   Doc. #: 29-7   Filed: 12/08/17   Page: 8 of 19 PageID #: 309

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

```
 1          Q.   Okay.  What -- Who in Jefferson County
 2   Sheriff's Office would know best what those terms mean?
 3          A.   Detective Schuenemann.
 4          Q.   Okay.  Does Jefferson County know from which
 5   weapon each of these pieces of evidence was fired?
 6          A.   Based upon the report, we can assume that a
 7   round came out of Deputy Rice's gun and two rounds out of
 8   Deputy Roberts' gun.
 9          Q.   Do you know which of the fragments belong to
10   rounds that came out of Rice or Roberts' gun?
11          A.   No, sir.
12          Q.   And there's an additional cartridge casing on
13   the scene and you don't know where that --
14          A.   No, sir.
15          Q.   Okay.  And, in fact, you don't know where any
16   of the four cartridge casings came from?
17          A.   That's kind of a -- Well, again, I have to go
18   back to based upon the report and one came out of Deputy
19   Rice's weapon, two came out of Deputy Roberts' weapon.
20          Q.   And that's based on what exactly do you draw
21   that conclusion?
22          A.   From the reports.
23          Q.   What in the reports?
24          A.   The statements of the officers.
25          Q.   Okay.  Has Jefferson County performed any
```

Case: 4:16-cv-01655-SNLJ   Doc. #: 29-7   Filed: 12/08/17   Page: 9 of 19 PageID #: 366

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

```
 1   ballistic or forensic testing to determine from which
 2   weapon each of these items came?
 3        A.   No, sir.
 4        Q.   Why not?
 5        A.   I mean, it was pretty clear.  You had three
 6   officers on the scene, an unfortunate incident happened
 7   with Mr. Hinkebein.  To me, there was we had consistent
 8   statements by all officers.  It was determined based upon
 9   all the information gathered what -- what occurred
10   unfortunately occurred.
11        Q.   Any other reason that no ballistic or forensic
12   testing was performed?
13        A.   No, sir.
14        Q.   In Exhibit 57, can you turn to the photo
15   marked with Post-It 18?
16             MR. HELLMICH:  Which number?
17             MR. TURK:  Eighteen.
18        A.   Okay.
19                  (Questions by Mr. Turk)
20        Q.   What's shown in this photograph?
21        A.   Based upon what I see and written here by
22   Detective Schuenemann, it is a deformed copper jacket
23   lead core projectile.
24        Q.   And you said that you couldn't tell me exactly
25   what copper jacketed lead core projectile means?
```

1    Strike that.  When Jefferson County Sheriff's Office does
2    do fingerprint work, DNA testing, or analysis, it's done
3    to draw additional facts in order to get a complete
4    picture of an incident; correct?
5         A.   I would say a picture of the incident, yes,
6    sir.
7         Q.   To get a complete understanding of the
8    incident; correct?
9         A.   Complete is kind of a word that's you're -- I
10   can't say complete 'cause each circumstance is different.
11   Each -- It can aid in investigating the incident.
12        Q.   Okay.  Did Jefferson County attempt to conduct
13   fingerprint or DNA testing on Deputy Rice's weapon?
14        A.   No, sir.
15        Q.   Did Jefferson County attempt to conduct
16   fingerprint or DNA testing on Deputy Rice's holster or
17   belt?
18        A.   No, sir.
19        Q.   Did Jefferson County attempt to conduct
20   fingerprint or DNA testing at all in the investigation of
21   Lucas' shooting?
22        A.   No, sir.
23        Q.   Why not?
24        A.   It was pretty clear to us from reading the
25   reports and reading the -- and entire investigation, you

Case: 4:16-cv-01655-SNLJ   Doc. #:  29-9   Filed: 12/08/17   Page: 11 of 19 PageID #: 382

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

1  us.
2       Q.   Okay.  And in your experience as a detective
3  sergeant and as a deputy and corporal and sergeant in a
4  20-year career with the Jefferson County Sheriff's
5  Office, when's the last time you know of that the
6  Jefferson County Sheriff's Office conducted a gunshot
7  residue test?
8            MR. HELLMICH:  Well, for the entire
9       Department?
10           THE WITNESS:  Yes.
11           MR. TURK:  I'm asking his personal knowledge.
12           MR. HELLMICH:  Okay.  If you know.
13      A.   Oh, man.  Phew, I just -- I don't recall.  I
14 couldn't give you a clear answer on that.
15                (Questions by Mr. Turk)
16      Q.   Okay.  Is it probably over a decade?
17      A.   I just don't know.  Been a while.
18      Q.   Years?
19      A.   Yes.
20      Q.   And in this instance, there was no attempt to
21 gather gunshot residue from Deputy Rice's hands?
22      A.   No, sir.
23      Q.   And no attempt to collect it from his holster
24 or his belt?
25      A.   No, sir.

Case: 4:16-cv-01655-SNLJ   Doc. #: 29-7   Filed: 12/08/17   Page: 12 of 19 PageID #: 368

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

1    Q.   And no attempt to collect gunshot residue from
2  Lucas' hands?
3    A.   No, sir.
4    Q.   And the reason that that is not done is
5  because, as you've stated, Jefferson County finds the
6  tests unreliable?
7    A.   And I'm saying that based upon the fact that
8  it was in an enclosed room -- or not enclosed room, but a
9  small area, three officers and one unfortunate victim in
10 a closed area, everybody is going to have gunshot residue
11 on them.  There's no sense in it.  It would make no
12 sense.
13   Q.   Can you pull Exhibit 48, which is the
14 Post-Shooting Policy?
15   A.   No, I don't -- It was right here.  Here it is.
16        MR. HELLMICH:  That's 44.
17   Q.   I'm going to ask you to look under Section V.
18 I'm sorry.  It's actually IV procedures, A(6).
19   A.   A(6) you said?
20   Q.   Yes.
21        MR. HELLMICH:  (Pointing.)
22   A.   Right here?  Yeah, okay.
23   Q.   And the sworn --  it states the sworn
24 supervisor shall determine whether the circumstances of
25 the incident require that the involved deputy's or sworn

Case: 4:16-cv-01655-SNLJ   Doc. #:  29-9   Filed: 12/08/17   Page: 13 of 19 PageID #: 369

LUCAS HINKEBEIN v. GAVIN HOPLER, et al
Deposition of JEFFERSON COUNTY, by SERGEANT JAMES KAUSLER as Corporate Designee, taken on 10/19/2017

```
 1    supervisor's duty weapon be taken for laboratory
 2    analysis; correct?
 3            A.    That's what it says.
 4            Q.    And in the investigation of the shooting of
 5    Lucas Hinkebein, you were the sworn supervisor?
 6            A.    Yes, sir.  One of them, I mean.
 7            Q.    Okay.  And it was -- was it your
 8    responsibility to determine whether the circumstances of
 9    the incident required that the deputy's duty weapon be
10    taken for lab analysis?
11            A.    Yes.
12            Q.    We've talked about fingerprint, DNA, or
13    gunshot residue analysis.  We've talked about ballistics
14    testing.  Is there any other type of analysis that could
15    be done by the laboratory analysis described in the
16    Post-Shooting Incident Policy?
17            A.    Not that I am aware of, no, sir.
18            Q.    Okay.  And in this instance, it was your
19    determination to not have the duty weapon taken for any
20    of that type of analysis?
21            A.    Correct.
22            Q.    Okay.  And we have described the reasons for
23    each of those types of analysis that you determined that
24    it was not necessary?
25            A.    From your previous question, yes, sir.
```

```
 1          A.   He does.
 2          Q.   Can you provide any testimony about Jefferson
 3   County's conclusion about which weapon fired each bullet
 4   reflected in the trajectory analysis?
 5          A.   No, sir.
 6          Q.   And is Detective Schuenemann the best person
 7   to talk to about that?
 8          A.   Yes, sir.
 9          Q.   Did Jefferson County -- Can you provide
10   testimony about whether Jefferson County concluded that
11   Deputy Rice's gun was fired through his holster?
12               MR. HELLMICH:  Well, same -- same --
13          A.   That's based -- That's --
14               MR. HELLMICH:  Hold on, hold on.  Same
15        objection as far as when you're asking for Jefferson
16        County's conclusions.  I think this witness has
17        already said he's not drawing conclusions for
18        Jefferson County, so I think you're calling for him
19        to speculate.
20          Q.   Have you concluded that Deputy Rice's gun was
21   fired through his holster?
22          A.   Have I concluded that?  No, but based upon all
23   the statements that were obtained from the officers
24   involved, that's what can be determined from those
25   statements.
```

```
 1        Q.   And it shows under the Chain Of Custody the
 2   same path chain of custody as Deputy Rice's weapon moving
 3   to the Crime Lab Locker and then into the Evidence Locker
 4   for storage is the last movement; correct?
 5        A.   It does appear that way, yes, sir.
 6        Q.   On Page 177, the cartridge casings and the
 7   projectile jacket fragments are all in the Evidence
 8   Locker, as well?
 9        A.   Based upon this Evidence Receipt, Item 310-2
10   through 310-16 does indicate his last entry that it went
11   to Evidence Locker for evidence storage.
12        Q.   Okay.  And --
13             MR. HELLMICH:  I'm going to -- Let's just stop
14        for a second.  I'll go on the record and I'm 99.9
15        percent certain that I e-mailed you on this early in
16        the case, but just so we're clear, virtually -- my
17        understanding is virtually all of this evidence was
18        destroyed after the prosecutor came back and advised
19        that there would be no criminal charges and advised
20        that it could, in fact, be destroyed, so it is my
21        understanding that -- and I don't want anybody to be
22        misled -- it's my understanding that almost all of
23        this, if not all of it, has been destroyed.  The
24        weapons may still be -- exist.  I believe maybe.
25             MR. TURK:  And that's --
```

1           MR. HELLMICH:  I'm not certain about that.
2      I'm happy to -- I'm happy to clarify, get any
3      clarification on any of that if you need it, but I
4      just don't want there to be any misunderstanding.
5           MR. TURK:  And that is specifically why I
6      included preservation of evidence on the corporate
7      designee because I wanted to ask about that, that I
8      know that things were destroyed at some point.
9                  (Questions by Mr. Turk)
10        Q.   And my specific questioning is, are these
11   things still in the Evidence Locker as reflected in these
12   chain of custody receipts that we received and do you
13   know what of these items, the weapons, the holsters, the
14   gun belts, and the fragments evidence --
15           MR. HELLMICH:  They're gone.
16        Q.   -- Items 2 through 21 still exist?
17        A.   No, I do not.
18        Q.   Okay.  Who does know that?
19           MR. HELLMICH:  I do.
20           MR. TURK:  Mr. Hellmich wants to go under
21      oath.
22        A.   All right.  I mean --
23           MR. HELLMICH:  I think the sheriff would have
24      known that --
25        A.   The sheriff would have known that, yeah.

1           MR. HELLMICH:  -- had you asked him because --
2      because I communicated with him about that early on.
3      I mean, this -- I don't see this as any -- any kind
4      of a real issue because, you know, we can stipulate
5      to whatever if you -- if you want to let me know
6      what you -- exactly you want to know, but as I said
7      earlier, virtually all of this evidence was
8      destroyed at that time that I mentioned.  I believe
9      at least one of the guns and maybe two of the guns
10     are still -- still exist and still are in evidence.
11     I could be proved to be mistaken on that, but I will
12     be happy to find out definitively if you'd like to
13     know.
14          Q.   So, I just want to get on the record
15   specifically that these Items 2 through 21, Sergeant,
16   you're not aware of whether those have been preserved or
17   not and those are the items on page Bates stamp 177
18   through 178; correct?
19          A.   I -- I am aware that there was -- And how I
20   know this because I think it needs to know because based
21   on your question is I was aware on the original time that
22   Mr. Hellmich came down and brought to our attention that
23   the suit was being filed, was asking for evidence, and
24   that's when we found out or it was still in the Bureau at
25   the time had found out that the evidence -- some of the

```
 1   evidence had already been destroyed.
 2        Q.   Do you know when the destruction took place?
 3        A.   No.  The gentleman that signed off on that,
 4   Helms, last name Helms, H-e-l-m-s, is deceased.  Dennis
 5   Helms.
 6        Q.   Do you know if there are any statements
 7   related to the -- any recorded statements related to the
 8   investigation that have not been preserved?
 9        A.   No, I do not.
10        Q.   Are there any statements related to the
11   investigation that are not contained in the police
12   report?
13        A.   Can you rephrase that for me, please, or
14   restate your question, make sure I'm following you?
15        Q.   There are a number of statements from
16   officers, there are statements from officers reflecting
17   their conversations with witnesses in the matter.  Those
18   are written in the police report.  There are audio and
19   video recorded statements in the police report from
20   speaking with the deputies and with witnesses.  Are you
21   aware of any other statements outside of those contained
22   in the police report related to the investigation?
23        A.   No, sir.
24        Q.   And you don't know which of any of the seized
25   weapons or holsters are still preserved or if they've
```

```
 1  been destroyed?
 2       A.   I do not.
 3       Q.   And you said that Mr. Helms made that
 4  decision.  Who is Mr. Helms?
 5       A.   He was one of the evidence custodians or
 6  assistant with the evidence custodian.  I can only
 7  assume -- Well --
 8            MR. HELLMICH:  Don't assume.
 9       A.   I won't assume.  I don't want to assume at
10  all.  I just --
11            MR. HELLMICH:  Tell him what you know.
12       A.   -- remember -- Yeah.  I just remember when
13  Mr. Hellmich came down and was looking for that evidence,
14  we looked at the Evidence Receipts and it showed
15  destroyed, and if I recall rightly, Dennis Helms' name
16  was on that, so from that, it was believed that Dennis
17  Helms is the one from whatever he received to destroy was
18  the one that destroyed it.
19       Q.   Okay.  So, there's a document out there that
20  reflects the destruction of these?
21       A.   I don't know for specifically.  I've been told
22  that there -- documents come from the prosecutor, but --
23       Q.   Okay.
24       A.   -- I don't -- I don't know.  I can't tell you
25  for sure there's a document out there.
```